**UNITED STATES of America,**

v.

Usama BIN LADEN, a/k/a "Usamah Bin–Muhammad Bin–Ladin," a/k/a "Shaykh Usamah Bin–Ladin," a/k/a "Abu Abdullah," a/k/a "Mujahid Shaykh," a/k/a "Hajj," a/k/a "al Qaqa," a/k/a "the Director," a/k/a "the Supervisor," Muhammad Atef, a/k/a "Abu Hafs," a/k/a "Abu Hafs el Masry," a/k/a "Abu Hafs el Masry el Khabir," a/k/a "Taysir," a/k/a "Sheikh Taysir Abdullah," a/k/a "Abu Fatimah," Ayman al Zawahiri, a/k/a "Abdel Muaz," a/k/a "Dr. Ayman al Zawahiri," a/k/a "the Doctor," Mamdouh Mahmud Salim, a/k/a "Abu Hajer al Iraqi," a/k/a "Abu Hajer," Khaled al Fawwaz, a/k/a "Khaled Abdul Rahman Hamad al Fawwaz," a/k/a "Abu Omar," a/k/a "Hamad," Ali Mohamed, a/k/a "Ali Abdelseoud Mohamed," a/k/a "Abu Omar," a/k/a "Omar," a/k/a "Haydara," a/k/a "Taymour Ali Nasser," a/k/a "Ahmed Bahaa Eldin Mohamed Adam," Wadih el Hage, a/k/a "Abdus Sabbur," a/k/a "Abd al Sabbur," a/k/a "Wadia," a/k/a "Abu Abdullah al Lubnani," a/k/a "Norman," a/k/a "Wa'da Norman," Fazul Abdullah Mohammed, a/k/a "Harun," a/k/a "Harun Fazhl," a/k/a "Fazhl Abdullah," a/k/a "Fazhl Khan," Mohamed Sadeek Odeh, a/k/a "Abu Moath," a/k/a "Noureldine," a/k/a "Marwan," a/k/a "Hydar," a/k/a "Abdullbast Awadah," a/k/a "Abdulbasit Awadh Mbarak Assayid," Mohamed Rashed Daoud Al-'Owhali, a/k/a "Khalid Salim Saleh Bin Rashed," a/k/a "Moath," a/k/a "Abdul Jabbar Ali Abdel–Latif," Mustafa Mohamed Fadhil, a/k/a "Mustafa Ali Elbishy," a/k/a "Hussein," a/k/a "Hussein Ali," Khalfan Khamis Mohamed, a/k/a "Khalfan Khamis," Ahmed Khalfan Ghailani, a/k/a "Fupi," a/k/a "Abubakary Khalfan Ahmed Ghailani," a/k/a "Abubakar Khalfan Ahmed," Fahid Mohammed Ally Msalam, a/k/a "Fahad M. Ally," Sheikh Ahmed Salim Swedan, a/k/a "Sheikh Bahamadi," a/k/a "Ahmed Ally," Defendants.

No. S(6)98CRIM.1023(LBS).

United States District Court, S.D. New York.

April 20, 2000.

Leonard Joy, Robert Tucker, Mark Gombiner, David Bruck, New York City, for Defendant Al'Owhali.

Jeremy Schneider, David Stern, David Ruhnke, New York City, for Defendant Khamis Mohamed.

### MEMORANDUM AND ORDER

SAND, District Judge.

The Defendants are charged with numerous offenses arising out of their alleged involvement in an international terrorist organization led by Defendant Usama Bin Laden ("Bin Laden") and that organization's alleged involvement in the August, 1998 bombings of the United States Embassies in Nairobi, Kenya and Dar es Salaam, Tanzania. Presently before the Court is Defendant Al-'Owhali's motion to dismiss Count One of the Indictment on the ground that it fails to state an offense. For the reasons set forth below, that motion is denied.

#### DISCUSSION

The factual and legal background of this case is fully set forth in three prior opinions of this Court, *see United States v. Bin Laden*, 91 F.Supp.2d 600 (S.D.N.Y.2000); *United States v. Bin Laden*, 92 F.Supp.2d 225 (S.D.N.Y.2000); *United States v. Bin Laden*, 92 F.Supp.2d 189 (S.D.N.Y.2000), familiarity with which is presumed.

Count One of the Indictment charges the Defendants with conspiring to kill United States nationals in violation of 18 U.S.C. § 2332(b).[1] Section 2332(b) provides federal criminal penalties for anyone who "outside the United States attempts to kill, or engages in a conspiracy to kill, United States nationals." 18 U.S.C.A. § 2332(b) (West 2000). Al-'Owhali argues that because the conspiracy charged in

Mary Jo White, New York City by Kenneth Karas, Patrick Fitzgerald, Michael J. Garcia, Paul Butler, for U.S.

Paul McAllister, Charles D. Adler, George Goltzer, New York City, for Defendant Salim.

James Roth, LLoyd Epstein, New York City, for Defendant Mohamed

Samuel Schmidt, Joshua Dratel, Deborah I. Meyer, New York City, for Defendant El Hage.

Michael Young, Carl J. Herman, Sandra L. Babcock, New York City, for Defendant Odeh.

---

1. Count One also refers to 18 U.S.C. § 2332(a). (*See* Indictment at ¶ 10.) In response to a defense motion claiming that it was contradictory to charge Count One as a violation of subsections (a) and (b) of § 2332, the Government has consented to the striking of all references to § 2332(a) from the Indictment and has indicated that it plans to file a superseding indictment that will eliminate all such references. (*See* Government's Memorandum of Law at 69; Letter from AUSA Karas to the Court of April 10, 2000.)

Count One is said to have occurred both outside the United States and within the United States, *see Bin Laden,* 91 F.Supp.2d 600, 613 55 n. 24 (S.D.N.Y.2000) (listing overt acts alleged to have occurred inside the United States), it does not constitute a violation of § 2332(b) and must, therefore, be dismissed.

We are not convinced by Mr. Al-'Owhali's argument. The statute at issue, 18 U.S.C. § 2332(b), makes it a crime to conspire to kill United States nationals while the conspirators are outside the United States; the Indictment plainly accuses the Defendants of engaging in precisely that conduct. Each of the Defendants named in Count One is accused of committing acts in furtherance of the charged conspiracy while outside the United States. To be sure, two of the named Defendants (El Hage and Ali Mohamed) as well as some unindicted co-conspirators, are also said to have committed acts in furtherance of the conspiracy while inside the United States. But the Court knows of no rule of law, and Mr. Al-'Owhali does not suggest one, which requires the dismissal of a count because, in addition to alleging a plain violation of a criminal statute, the count also alleges conduct that is, arguably, not prohibited by the statute. It is our view that so long as a count alleges acts committed outside the United States in furtherance of a conspira-

cy to kill United States nationals, it alleges a violation of § 2332(b).

A review of § 2332(b)'s legislative history [2] confirms our interpretation. The statute's unmistakable purpose was to expand federal criminal authority to provide a basis for prosecution of certain offenses that Congress believed the United States had theretofore been unable to prosecute. *See* H.R. Conf. Rep. No. 99–783, at 87 (1986); 132 Cong. Rec. S1057-01 (daily ed. Feb. 5, 1986) (statement of Sen. Specter) (indicating that the measure was "urgently needed to fill [a] critical gap in our antiterrorism arsenal").[3] We believe that the phrase "outside the United States," chosen by the drafters to effectuate that purpose should, therefore, be read as a term of inclusion rather than as one of limitation. Had Congress chosen to restrict prosecutions of terrorist conspiracies to those in which no acts in furtherance occurred within the United States, it clearly could have done so. For example, a contemporaneous, alternative proposal advanced by Senator Denton—the International Terrorism Control Act, S.1940, 99th Cong. (1985)—would only have provided authority to prosecute conspiracies to kill United States nationals that occurred "totally outside the United States." *See id.* § 3(a). That Congress chose not to enact Senator Denton's bill, and, after extensive hearings and long consideration,[4] failed to include a

**2.** Section 2332(b) originated with a bill introduced in the Senate by Senator Specter on September 25, 1984. *See* S. 3018, 98th Cong. (1984). The bill was re-introduced in the 99th Congress, first, as S. 1373 on June 27, 1985 and, subsequently, as S. 1429 on July 10, 1985. S. 1429, which was virtually identical to the existing provision, was filed by the Judiciary Committee on February 5, 1986 and passed, unanimously, by the full Senate on February 19, 1986. The same provision was offered by Senator Specter as an amendment to the Diplomatic Security and Antiterrorism Act, H.R. 4151, 99th Cong. (1986), that had been passed by the House of Representatives, *see* 132 Cong. Rec. S8403-03 (daily ed. June 25, 1986) (statement of Sen. Specter), which amendment was adopted by the Conference committee, and included in the final version of the bill that was enacted into law as § 1202

of the Diplomatic Security and Antiterrorism Act of 1986, Pub.L. No. 99–399, 100 Stat. 896.

**3.** *See also* 132 Cong. Rec. S1382-01 (remarks of Sen. Specter) (indicating that purpose of statute is to fill gap in federal law) (quoting State Department Legal Advisor Abraham Sofaer); 132 Cong. Rec. S8430-01 (remarks of Sen. Leahy) (indicating that the bill would close a "serious gap in our arsenal against terrorists").

**4.** *See* 132 Cong. Rec. S8430-01 (daily ed. June 25, 1986) (statement of Sen. Specter) (indicating that provision had "an extensive legislative history," including a "series of amendments or perfecting amendments ... introduced over the course of ... 2 years").

similar limitation in the bill that would eventually become § 2332 provides further support for our conclusion that no such restriction was intended.

### CONCLUSION

For all of the foregoing reasons, we conclude that Count One adequately alleges a violation of 18 U.S.C. § 2332(b) and we therefore deny Mr. Al-'Owhali's motion.

SO ORDERED.